# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOUIS OLIVEREZ, JR., | CASE NO. 1:09-cv-00352-LJO-SKO PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED IN PART AND DENIED IN PART |
| v. | |
| BEN ALBITRE, et al., | |
| Defendants. | (Doc. 36) |
| | FIFTEEN-DAY OBJECTION DEADLINE |

**Findings and Recommendations on Defendants' Motion for Summary Judgment**

**I.     Procedural History**

Plaintiff Louis Oliverez, Jr. is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action for damages is proceeding on Plaintiff's amended complaint, filed on May 7, 2009, against Defendants Albitre and Adams for violation of the Free Exercise Clause of the First Amendment of the United States Constitution.[1] Plaintiff's claim arises out of his inability to gain access to his previously-purchased spiritual oil for prayer and worship while he was at California State Prison-Corcoran (Corcoran) in 2008 and 2009.

On December 8, 2011, Defendants filed a motion for summary judgment. Plaintiff filed an opposition on February 3, 2012, and Defendants filed a reply on February 10, 2012.[2] Defendants'

---

[1] Plaintiff's due process claim, which arose out of the failure of Defendants to respond to his inmate appeals, was dismissed for failure to state a claim.

[2] In addition to the notice of the requirements for opposing a motion for summary judgment provided by the Court on December 14, 2009, the Court re-issued the notice on July 12, 2012, in accordance with the recent decision in Woods v. Carey, 684 F.3d 934, 935-36 (9th Cir. 2012). Plaintiff was provided thirty days within which to file a

1 motion for summary judgment has been submitted upon the record, and these findings and
2 recommendations now issue.  Local Rule 230(l).

3 **II.      Legal Standard**

4       Any party may move for summary judgment, and the Court shall grant summary judgment
5 if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled
6 to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual
7 Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is
8 disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record,
9 including but not limited to depositions, documents, declarations, or discovery; or (2) showing that
10 the materials cited do not establish the presence or absence of a genuine dispute or that the opposing
11 party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation
12 marks omitted).  The Court may consider other materials in the record not cited to by the parties,
13 although it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified
14 School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).

15       Defendants do not bear the burden of proof at trial and in moving for summary judgment,
16 they need only prove an absence of evidence to support Plaintiff's case.  In re Oracle Corp. Securities
17 Litigation, 627 F.3d 376, 387 (9th Cir. 2010).  However, in judging the evidence at the summary
18 judgment stage, the Court does not make credibility determinations or weigh conflicting evidence,
19 Soremekun, 509 F.3d at 984 (quotation marks and citation omitted), and it must draw all inferences
20 in the light most favorable to the nonmoving party and determine whether a genuine issue of material
21 fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo
22 Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).

23 ///
24 ///
25 ///
26 ///
27

28 new opposition, if he so desired.  None was filed.

## III. Discussion

### A. Allegations Giving Rise to Free Exercise Claim[3]

In his amended complaint, Plaintiff, then an inmate housed at Corcoran, alleges that in September 2008, he ordered a spiritual package from an approved vendor, in compliance with all applicable prison rules and regulations. The order consisted of one book and one sixteen-ounce container of spiritual oil.

Per prison regulations, the chaplain's office representative maintains possession of the oil and distributes it to inmates two ounces at a time for prayer and worship.

Defendant Albitre was the chaplain's office representative for pagan/earth-based religions including Native Americans, Odinists, and Wiccans. Plaintiff, a Wiccan, requested the distribution of the allowable amount of spiritual oil from Defendant Albitre, but he received no response. Plaintiff then, via the inmate appeals process, requested a copy of the order receipt, but his request was denied by Defendant Albitre.

On November 10, 2008, Plaintiff initiated an inmate appeal, which received no response.

On December 15, 2008, Plaintiff initiated a second inmate appeal, but it, too, received no response.

On January 11, 2009, Plaintiff sent a letter to Associate Warden Sheppard-Brooks, but he received no response.

On January 19, 2009, Plaintiff attempted to speak with Captain Quinones, but he was denied access to the office by yard staff.

On January 21, 2009, Plaintiff's mother telephoned Warden Defendant Adams' office and was instructed by Maria to have Plaintiff write a letter to Defendant Adams.

On January 30, 2009, Plaintiff sent a letter to Defendant Adams.

///

---

[3] Plaintiff's amended complaint is verified and therefore, it is treated as an opposing declaration to the extent it is based on Plaintiff's personal knowledge of specific facts which are admissible in evidence. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004). Omitted from this section are the facts set forth by Plaintiff regarding his specific religious beliefs and the role played of spiritual oil. Defendants do not challenge the sincerity of Plaintiff's belief that the use of spiritual oil is consistent with his faith and therefore, those facts are irrelevant to the resolution of their motion for summary judgment. Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008).

1  Plaintiff alleges that the denial of his spiritual oil by Defendant Albitre violated his free
2  exercise rights, and that Defendant Adams failed to address the violation after he was contacted by
3  Plaintiff's mother and then Plaintiff.

### B. Legal Standard for Free Exercise Claims Brought Under Section 1983

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Under section 1983, Plaintiff must demonstrate a link between the actions or omissions of each named defendant and the violation of his rights; there is no *respondeat superior* liability under section 1983. Ashcroft v. Iqbal, 556 U.S. 662, 676-77, 129 S.Ct. 1937 (2009); Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934.

Plaintiff's claim arises from the alleged violation of his rights under the Free Exercise Clause of the First Amendment. "Inmates . . . retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400 (1987) (internal quotations and citations omitted). The protections of the Free Exercise Clause are triggered when prison officials substantially burden the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008); Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997), *overruled in part by* Shakur, 514 F.3d at 884-85.

However, lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. O'Lone, 482 U.S. at 348 (citation and quotation marks omitted). "To ensure that courts afford appropriate deference to prison officials, . . . prison regulations alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." O'Lone, 482 U.S. at 349. Under this standard, when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is

4

reasonably related to legitimate penological interests. Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254 (1987) (quotation marks omitted).

**C.    Undisputed Facts**

1.    Defendant Albitre is the Native American Spiritual Leader at Corcoran, and he has worked for the California Department of Corrections and Rehabilitation (CDCR) for three years.

2.    In general, Defendant Albitre's responsibilities as Native American Spiritual Leader include providing spiritual guidance to Native American inmates. Defendant Albitre presides over the Sweat Lodge, Native American religious ceremonies, and other Native American days of religious significance. Additionally, Defendant Albitre organizes and instructs classes regarding the Native American religion, and provides individual and group counseling to Native American inmates. Defendant Albitre also supervises the religious programming of other faith groups at Corcoran, including Buddhist, Muslims, Odinists, and Wiccans, among others.

3.    Generally, inmates at Corcoran are allowed to purchase and possess prayer oils.[4] Pursuant to institutional policy, inmates are permitted to possess two ounces in their cells. The remainder of their prayer oil is locked in the chapel office.

4.    When an inmate has used his two ounces of oil and he has additional oil stored in the chapel, he can request to obtain additional oil from his chapel representative. There are no official request forms for this procedure.

5.    Plaintiff ordered spiritual oil from a vendor in July 2008 and he was provided with that oil.

6.    On one occasion, a red liquid was sent to Plaintiff from a vendor, but pursuant to departmental policy, the substance - ink which was part of a writing kit - was disposed of as contraband.

7.    In September 2008, Defendant Albitre approved an order for a second spiritual package for Plaintiff. In the order, Plaintiff requested to purchase a medallion, herbs, a book, and prayer oil.

8.    Plaintiff does not believe that Defendant Albitre would have denied subsequent orders of prayer oil.

---

[4] Spiritual oil and prayer oil are used interchangably.

5

9.     After Defendant Albitre was served with this lawsuit, he searched the chapel for any stored oil belonging to Plaintiff, but he did not find any.

10.    Defendant Adams was employed with CDCR for thirty-one years, and he is now retired.

11.    Defendant Adams was the Warden of Corcoran from January 2006 through December 2009. As Warden, Defendant Adams supervised the Chief Deputy Warden, who handled the daily operations of the institution. Defendant Adams reported to the Associate Director, High Security Transitional Housing Deputy Director, Department of Adult Institutions ("DAI"), and Director of DAI. Defendant Adams' duties as Warden were to plan, organize, administer, direct, and coordinate all correctional, business management, work-training incentive, education, health care delivery and allied services and related programs within the institution; formulate and execute a progressive program for the care, treatment, training, discipline, custody, and employment of inmates; coordinate communications with headquarters and other departments; handle external relationships with governmental, legislative, community and business leaders at local and State levels; and provide executive leadership skills and management decisions in daily operations.

12.    Correspondence sent from inmates directly to the Warden is not received or reviewed by the Warden. All mail addressed to the Warden is first screened by an office technician. The Warden's Office does not track or otherwise log mail sent directly to the Warden by inmates.

13.    When inmates forward correspondence to the Warden, the correspondence is intercepted, screened, and sent to the appropriate department within the prison. For example, if an inmate sends a letter to the Warden's office expressing concern for his safety, the letter is forwarded to the Investigative Services Unit to investigate the inmate's claims, and correspondence regarding deficient health care is forwarded to the Heath Care Appeals Coordinator.

14.    As Warden, Defendant Adams did not receive or review letters that inmates sent to his office. All inmate correspondence was reviewed by Defendant Adams' office technicians, who would then forward the correspondence to the appropriate staff to review and/or respond.

15.    Defendant Adams did not receive a letter from Plaintiff dated January 29, 2009, and he never saw Plaintiff's letter prior to being served with Plaintiff's first amended complaint. Defendant Adams learned of Plaintiff's allegations after he was served with Plaintiff's complaint, and he was

6

not aware of them prior to that time. Based on his regular practice of delegating the handling of his institutional mail, which is voluminous, Defendant Adams believes that if the letter was received by his office, it would have been routed for response by one of his office technicians.

16. Defendant Adams has never met or spoken to Plaintiff.

17. A. Erwin, an office technician with the Warden's Office at Corcoran, does not recall seeing Plaintiff's letter, but it would not have been forwarded to Defendant Adams for review. Instead, any correspondence received by the Warden's Office would have been forwarded to the Facility Captain or to the Appeals Office, or perhaps sent back to Plaintiff for him to submit directly to the Appeals Office.

### D.   Defendant Adams

#### 1.   Defendants' Position

Turning first to Defendant Adams, Plaintiff claims that Defendant Adams is liable for the violation of his First Amendment rights because Defendant was on notice as to the violation but he failed to take corrective action.

Defendants argue that Defendant Adams is entitled to judgment as a matter of law and they submit evidence that correspondence sent to the Warden from inmates is not received by or reviewed by the Warden. (Doc. 36-2, Motion, Adams Dec., ¶4; Erwin Dec., ¶¶2-3.) Instead, all correspondence from inmates to the warden is intercepted, screened, and sent to the appropriate department within the prison, and the correspondence is not tracked or otherwise logged. (Adams Dec., ¶¶4, 6; Erwin Dec., ¶¶2-3.) Defendants also submit evidence that although A. Erwin, an office technician in the Warden's Office at Corcoran, does not recall Plaintiff's letter, if received, it would have been forwarded to Facility Captain or the Appeals Office, or possibly returned to Plaintiff; and that Defendant Adams did not see Plaintiff's letter and was not aware of his allegations until being served with the amended complaint. (Adams Dec., ¶5-7; Erwin Dec., ¶4.)

#### 2.   Plaintiff's Position

In support of his claim that Defendant Adams knew of the constitutional violation but failed to intervene, Plaintiff submits evidence that his mother called the Warden's Office in January 2009 and she was told by a secretary named Maria to have Plaintiff write a letter to the Warden explaining

"everything that was going on with his religious oil." (Doc. 43, Opp., Ex. L.) Thereafter, on January 29, 2009, Plaintiff wrote a letter to Defendant Adam and mailed it. (Id., Ex. M.)

### 3. Findings

The Court is mindful that the failure of higher-level officials to take action despite being on notice of an alleged violation will support a claim against them under section 1983. Snow v. McDaniel, 681 F.3d 978, 989 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1098 (9th Cir. 2006); see also Starr v. Baca, 652 F.3d 1202, 1207-08 (9th Cir. 2011). Here, however, Plaintiff has submitted no evidence controverting Defendants' evidence that as the Warden, Defendant Adams did not receive or review inmate correspondence, and that Defendant Adams would not have reviewed Plaintiff's letter, as that task was delegated to office technicians, who forwarded correspondence to the appropriate department.

While Plaintiff purports to dispute the evidence relating to the handling of mail received by the Warden's Office, his unsupported conjecture does not constitute evidence and cannot raise a triable issue of fact.

There is also no evidence that Maria, a secretary with the Warden's Office, spoke with Defendant Adams about Plaintiff's problem and directly relayed to Plaintiff's mother information provided to her by Defendant Adams. In his deposition, Plaintiff testified that "Maria conveyed to [his mother] that Warden Adams explained that she should explain to [him] that I should write a letter to him." (Opp., Ex. B, court record p. 29, depo tx. p. 25, lns. 14-16.) However, assuming Maria's statements are not hearsay, Plaintiff's mother's statement regarding what Maria told her, attested to by Plaintiff, is inadmissible hearsay.[5]

Further, Plaintiff testified that he was relying on his mother's declaration as evidence that Warden Adams was aware of the issue vis a vis his mother's telephone call, but the declaration contains no such attestation by Plaintiff's mother. (Id., depo. tx., p. 27, lns. 21-25 & p. 28, lns. 1-7.) Plaintiff's mother states only that after she called back as directed by Maria, Maria told her to have Plaintiff send a letter. (Ex. L.)

---

[5] Fed. R. Evid. 801(c), (d)(2)(D).

8

Finally, although Plaintiff argues that he sent his letter through the United States Postal Service rather than the institutional mail, there is no basis to support any inference that Plaintiff's letter - which is correspondence from an inmate - would have been handled differently depending on its method of delivery. (Adams Dec., ¶4; Erwin Dec., ¶2.)

In conclusion, there is no evidence that Defendant Adams was aware of the alleged denial of Plaintiff's spiritual oil by Defendant Albitre, due either to Plaintiff's mother's phone call or to Plaintiff's letter; and Defendants have submitted evidence of the procedure for handling inmate correspondence, a procedure which did not involve receipt or review of letters by the Warden. Plaintiff may not seek to impose liability on Defendant Adams under a theory of *respondeat superior*, e.g., Iqbal, 556 U.S. at 676-77, and in the absence of any evidence that Defendant Adams was on notice of the alleged violation, there exist no triable issues of fact, entitling Defendant to judgment as a matter of law, Snow, 681 F.3d at 989.[6]

### E.     Defendant Albitre

#### 1.     Defendants' Position

In response to Plaintiff's claim that Defendant Albitre infringed upon Plaintiff's First Amendment rights by failing to provide Plaintiff with his spiritual oil, Defendant contends that in September 2008, he approved Plaintiff's request to order a medallion, herbs, a book, and spiritual oil, but he does not know if Plaintiff received the items and he does not recall Plaintiff requesting any spiritual oil refills from the chapel after submitting his order. (Doc. 36-2, Motion, Albitre Dec., ¶¶6-7.) After being served with this lawsuit, Defendant Albitre searched the chapel for any stored oil belonging to Plaintiff, but he did not find any; and he attests that if Plaintiff had oil stored there and requested it, he would have provided it, as he did in the past and as is routine. (Id., ¶8.)

Defendant attests that the oil may have been received by the prison but misplaced by Defendant, another staff member, or Receiving and Release, which receives incoming packages. (Id., ¶9.) Defendant attests that he does not recall receiving any packages from Receiving and Release containing spiritual oil for Plaintiff after September 2008, and he never received Plaintiff's

---

[6] In light of this finding, the Court does not reach Defendant Adams' qualified immunity argument.

purported inmate appeals. (Id., ¶¶9-10.) Defendant attests that he did not have any problem with Plaintiff and he enjoyed a cordial relationship with him. (Id., ¶11.) Defendant denies discriminating against Plaintiff because of his religious beliefs and contends that he tried to accommodate Plaintiff's religious requests. (Id.)

### 2. **Plaintiff's Position**[7]

In September 2008, Plaintiff ordered a book and some spiritual oil. (Doc. 43, Opp., Ex. B, court record p. 26, depo. tx. p. 16, lns. 18-21.) The order was approved, but upon its arrival at the prison, Plaintiff was given the book and told by Defendant Albitre that he could not have the oil because it was no longer permitted. (Id., depo. tx. p. 16, lns. 22-25 & p. 17, lns. 1-7.) Plaintiff told Defendant Albitre that it was permitted because other inmates were receiving their oil; Defendant said he would check into it. (Id., depo. tx. p. 17, lns. 7-10.) Defendant Albitre subsequently told Plaintiff that the oil was permitted but it was considered a safety hazard, as it could be thrown on the floor and cause officers to slip. (Id., depo. tx. p. 17, lns. 10-14.) Plaintiff countered that other substances such as butter, lotion, baby oil, and shampoo could do the same thing but were permitted. (Id., depo. tx. p. 17, lns. 14-17.) Defendant Albitre then said Plaintiff could have his oil the next week. (Id., depo. tx. p. 17, lns. 18-19.) When Plaintiff again approached him seeking the permissible allotment of oil, Defendant said to continue waiting and he would get around to it. (Id., depo. tx. p. 17, lns. 19-22.)

In November 2008, Plaintiff filed an inmate appeal seeking his spiritual oil and the appeal was assigned to the chaplain's office for response. (Id., depo. tx. p. 25, lns. 17-25, p. 26, lns. 1-25, p. 27, lns. 1-6, & p. 38, lns. 9-22; Ex. F.) After no response was received, Plaintiff filed a second inmate appeal requesting that the first appeal be addressed. (Id., depo. tx. p. 25, lns. 17-25, p. 26, lns. 1-25, & p. 27, lns. 1-6; p. 38, lns. 9-22; Ex. E.) The second appeal was also assigned to the chaplain's office, but Plaintiff received no response. ((Id., depo. tx. p. 25, lns. 17-25, p. 26, lns. 1-25, & p. 27, lns. 1-6; Ex. G.)

///

---

[7] Plaintiff's opposition brief is not verified and therefore, it does not constitute an opposing declaration, but it is accompanied by evidence and, as previously stated, Plaintiff's amended complaint is verified.

Although Defendant Albitre never told Plaintiff any further orders of oil would be denied, Plaintiff did not attempt to place any more orders for spiritual oil, because he did not have money to place orders which would be approved but not dispensed, and he felt uncomfortable with the situation given that other inmates continued to receive their spiritual oil while Plaintiff was given excuses and never provided with his oil despite assurances that he would get it. (Id., depo. tx. p. 28, lns. 19-25, p. 29, lns. 1-18, p. 34, lns. 14-25, p. 44, lns. 6-25, & p. 45, lns. 1-22.)

### 3. **Findings**

Although Defendant Albitre argues that the evidence establishes that he was negligent at best, that is *his* stated position rather than an accurate summation of the evidence construed in the light most favorable to Plaintiff. Plaintiff has submitted admissible evidence that on two occasions Defendant declined to provide him with his authorized two-ounce allotment of spiritual oil, first as no longer permissible and then as permissible but a safety concern, reasons which were untrue. On the third occasion, Defendant agreed Plaintiff could have the oil but he declined to provide it until the next week. When Plaintiff subsequently inquired, he was that told Defendant would get around to it; Plaintiff never received the oil.

As previously stated, the protections of the Free Exercise Clause are triggered when prison officials substantially burden the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. Shakur, 514 F.3d at 884-85. This case does not involve, at least for the purpose of resolving Defendant's motion for summary judgment, issues regarding whether Plaintiff's religious practice was substantially burdened, the sincerity of Plaintiff's religious beliefs, or whether the denial of the oil was reasonably related to a legitimate penological purpose. The issue in this case is limited to whether or not Defendant knowingly and intentionally failed to provide Plaintiff with the approved two-ounce allotment of Plaintiff's stored spiritual oil. A dispute exists between the parties regarding whether Defendant is unaware whether the oil was ever received at the prison or what happened to it assuming it was received and he, at most, negligently failed to provide Plaintiff with his spiritual oil; or whether Defendant first offered excuses for why the oil was not going to be provided and then failed to provide it after conceding it was permissible, despite two requests from Plaintiff and two inmate

appeals which were forwarded to the chaplain's office. In as much as this dispute is material to whether Defendant infringed upon Plaintiff's right to freely exercise his religion, Defendant is not entitled to judgment as a matter of law.

### 4. Qualified Immunity

#### 1) Two-Part Inquiry

Defendant Albitre also argues that he is entitled to qualified immunity, which is "immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Mueller v. Auker, 576 F.3d 979, 993 (9th Cir. 2009) (citation and internal quotations omitted). Qualified immunity shields government officials from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably," Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808 (2009), and it protects "all but the plainly incompetent or those who knowingly violate the law," Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986).

In resolving the claim of qualified immunity, the Court must determine whether, taken in the light most favorable to Plaintiff, Defendant's conduct violated a constitutional right, and if so, whether the right was clearly established. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001); Mueller, 576 F.3d at 993. While often beneficial to address in that order, the Court has discretion to address the two-step inquiry in the order it deems most suitable under the circumstances. Pearson, 555 U.S. at 236 (overruling holding in Saucier that the two-step inquiry must be conducted in that order, and the second step is reached only if the court first finds a constitutional violation); Mueller, 576 F.3d at 993-94.

In this instance, for the reasons articulated in the section E(3), Plaintiff's allegations are sufficient to support the existence of a constitutional violation and there exist triable issues of fact

///

as to whether that right was violated. Therefore, the Court proceeds without further discussion to the second step of the inquiry.

### 2) Clearly Established Right

"For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739, 122 S.Ct. 2508, 2515 (2002). While the reasonableness inquiry may not be undertaken as a broad, general proposition, neither is official action entitled to protection "unless the very action in question has previously been held unlawful." Hope, 536 U.S. at 739. "Specificity only requires that the unlawfulness be apparent under preexisting law," Clement v. Gomez, 298 F.3d 898, 906 (9th Cir. 2002) (citation omitted), and prison personnel "can still be on notice that their conduct violates established law even in novel factual circumstances," Hope, 536 U.S. at 741.

Defendant Albitre argues that he reasonably believed his actions were lawful and he would not have been on notice that accidentally misplacing an inmate's prayer oil would violate the Constitution, as it is not clearly established that negligence is sufficient to support a free exercise violation. Defendant Albitre also argues that the right of Wiccan inmates to possess prayer oil is not clearly established and that Plaintiff offers no authority for the proposition that Wiccan inmates, or inmate in general, have the right to possess prayer oil.

By the latter half of 2008, it had long been clear that prisoners retained the protections afforded by the First Amendment, including the entitlement to a reasonable opportunity to practice their religion, and any impingement on inmates' First Amendment rights must be reasonably related to legitimate penological interests. O'Lone, 482 U.S. at 348; Cruz v. Beto, 405 U.S. 319, 322, 92 S.Ct. 1079 (1972); Shakur, 514 F.3d at 884-85; Henderson v. Terhune, 379 F.3d 709, 712 (9th Cir. 2004); Freeman, 125 F.3d at 737, *overruled in part by* Shakur, 514 F.3d at 884-85; May v. Baldwin, 109 F.3d 557, 561 (9th Cir. 1997). While Defendant points to the absence of case law holding that negligent misplacement of prayer oil violates the Constitution or that Wiccan inmates, and inmates generally, have a protected right under the First Amendment to possess spiritual oil, this case does not involve (1) a purely negligent act by Defendant, (2) a reasonable but mistaken belief by Defendant regarding Plaintiff's First Amendment right to possess spiritual oil, or (3) a reasonable

but mistaken belief by Defendant that there existed a legitimate penological purpose for the denial of the oil.[8]

The evidence must be viewed in the light most favorable to Plaintiff and in this case, the evidence is as follows: inmates at Corcoran were permitted to order spiritual oil from approved vendors and to possess it two ounces at a time; the chaplain's office stored the oil and dispensed it two ounces at a time upon request; Plaintiff previously ordered and was dispensed spiritual oil; Plaintiff's September 2008 order for spiritual oil from an authorized vendor was approved by Defendant Albitre; other inmates were receiving their two-ounce allotments of spiritual oil during the course of the events at issue; on at least four occasions, Plaintiff requested his two-ounce allotment of spiritual oil from Defendant Albitre in accordance with the applicable prison regulations; Defendant Albitre initially told Plaintiff, incorrectly, that the oil was prohibited; Defendant Albitre then told Plaintiff, again incorrectly, that the oil was permitted but Plaintiff could not have it because it constituted a safety risk; Defendant Albitre next told Plaintiff he was permitted to have the oil, but Defendant would provide it the next week; and when the next week arrived, Defendant Albitre told Plaintiff he could have the oil whenever Defendant got around to it. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." Ashcroft v. al-Kidd, __ U.S. __, __, 131 S.Ct. 2074, 2085 (2011). The facts, taken as true for the purpose of resolving Defendant's motion, do not support a finding that Defendant, at most, negligently misplaced Plaintiff's spiritual oil or that he otherwise reasonably but mistakenly believed it was lawful to deny Plaintiff's repeated requests for the distribution of two ounces of spiritual oil.

The authority cited to by Defendant does not support a determination to the contrary. Campbell v. Alameida, No. C 03-4984 PJH (PR), 2006 WL 2734330, at *3-4 (N.D.Cal. Sept. 25, 2006) is a pre-2007 case designated not for publication, but regardless, it involved, on summary

---

[8] It is for this reason that the Court cannot narrowly confine the inquiry to whether the unlawfulness of a purely negligent act or whether the right of Wiccan inmates, or any inmate, to possess spiritual oil was clearly established, as Defendants argue.

14

judgment, a finding that disallowing an inmate to purchase and possess religious oils in his cell was reasonably related to legitimate penological objectives; and, alternatively, a finding prison officials were entitled to qualified immunity on the grounds that there was no constitutional violation and if there was, there was no authority suggesting that prison officials were required to accommodate religious beliefs held by one prisoner or only a handful of prisoners.

In Lewis v. Mitchell, 416 F.Supp.2d 935, 944 (S.D.Cal. Oct. 5, 2005), the court granted in part and denied in part a motion to dismiss, dismissing a free exercise claim with leave to amend where the inmate did not allege any conscious act on the part of the defendant to burden his free exercise of religion, but finding a viable claim against the other two defendants who allegedly misled him to eat pork.

Finally, in Shaheed v. Winston, 885 F.Supp. 861, 866-868 (E.D.VA May 5, 1995), following a bench trial, the court found that jail policies alleged to have infringed upon Muslim inmates' free exercise rights were reasonably related to legitimate penological interests and it also found that a one-time, negligent failure to accommodate the 1993 Ramadan observance did not violate the Free Exercise Clause.

However, as previously stated, whether the conduct at issue was negligent or intentional is disputed, and this case does not involve any claim by Defendant that he denied Plaintiff's request for a two-ounce allotment of spiritual oil based on the furtherance of a legitimate penological goal or that the denial was in any way related to the practice of Wicca itself or to the right of inmates to possess spiritual oil. As such, this case does not involve a reasonable but mistaken judgment about the right to possess spiritual oil, and assuming the truth of Plaintiff's version, the law governing the free exercise of religion was sufficiently clear that Defendant Albitre would have been on notice that, in the absence of a reasonable relationship to a legitimate penological purpose, his conduct infringed upon Plaintiff's free exercise rights. Defendant Albitre is not entitled to qualified immunity.

**IV.     Recommendation**

Based on the foregoing, the Court HEREBY RECOMMENDS that Defendants' motion for summary judgment, filed on December 8, 2011, be GRANTED IN PART and DENIED IN PART as follows:

1. Defendant Adams' motion for judgment as a matter of law on Plaintiff's free exercise claim be GRANTED;
2. Defendant Albitre's motion for judgment as a matter of law on Plaintiff's free exercise claim and for judgment based on qualified immunity be DENIED;
3. This matter be set for trial; and
4. The parties be ordered to file status reports within thirty (30) days regarding their position on having a settlement conference prior to the expenditure of any resources on trial preparation.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fifteen (15) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   August 31, 2012**                    /s/ Sheila K. Oberto
                                                UNITED STATES MAGISTRATE JUDGE